## BUFORD *v.* COOK *et al.*

*(Circuit Court, W. D. Iowa.* August 31, 1888.)

**1. FRAUDULENT CONVEYANCES—WHAT CONSTITUTE—EVIDENCE—SUFFICIENCY.**

In a proceeding by creditors' bill to reach certain land which had been conveyed to the debtor's mother-in-law, the latter claimed that she was to be allowed a certain sum per year for services in the debtor's family, and that she owned and had paid for the land in suit, but knew nothing about how or when the purchase had been made, or a building thereon had been erected. The proceeds of the only property she had, had been invested in other lands, and her husband, during the last years of his life, having been disabled, had contributed nothing to their support. The debtor had in fact furnished and paid the money. *Held,* that complainant was entitled to a decree subjecting such property to the satisfaction of his judgments.[1]

**2. SAME.**

In a proceeding by creditors' bill to set aside certain mortgages as fraudulent, it appeared that the mortgagee, who was the debtor's banker, had begun business with a capital of $10,000, and in six years had taken mortgages for advances to the debtor to the amount of $23,000. The debtor had previously been in embarrassed circumstances, and was carrying on a large agricultural implement business, with warehouses and agents in different places, in an extravagant and careless manner. As to a portion of the indebtedness, its genuineness was testified to by the mortgagee and debtor; and the former offered to produce the account, but it was not called for. As to the remainder, a full itemized account was presented, and no item was shown to be wrong. *Held* that, although some of the debtor's property might not have been accounted for by the mortgagee, and certain chattel mortgages taken as additional security might not be sustainable, the transactions could not be said to be fraudulent.[1]

In Equity.

Creditors' bill by James M. Buford, assignee, against John B. Cook, Viola E. Cook, Susan Smith, and W. L. Culbertson, to set aside fraudulent conveyances.

[1] See, as to what is sufficient evidence of fraudulent intent to cause a conveyance by a debtor to be set aside, Neal v. Foster, *post*, 29, and note.

*Cole, McVey & Clark,* for complainant.
*Geo. W. Payne,* for defendants.

BREWER, J. The facts in this case are these: Plaintiff holds two judgments against the defendant John B. Cook, amounting together to about $9,000, upon which judgments executions have been issued and returned unsatisfied, and this bill was filed as a creditors' bill to reach certain real estate, part of it standing in the name of Viola E. Cook, the wife of John D. Cook, and a single lot in the name of Susan Smith, the mother of Mrs. Cook. One of these judgments was rendered against both John D. and Viola E. Cook. So far, then, as Mrs. Cook's interest is concerned, it can be taken under that judgment as well as her husband's. All the real estate standing in the name of Mrs. Cook is subject to the lien of several mortgages given to the defendant W. L. Culbertson, and the bill attacks these mortgages as fraudulent and void.

The first question, and that easy of solution, is whether the real estate standing in the name of Mrs. Smith is hers, or equitably the property of John B. Cook. Mrs. Smith and her second husband lived with Mr. and Mrs. Cook from 1873 to 1884, at which time Mr. Smith died. At the time she commenced living with Mr. Cook she had no property but a house and lot in Ohio, left her by her first husband, and the proceeds of that, when sold, were invested in lot 7 of block 3, in Carroll, Iowa. Afterwards lot 1 in block 9 was purchased in her name, and a building erected on it, and this is the property about which the contention arises. During the last years of his life Mr. Smith was practically disabled from work, and contributed substantially nothing to the support of himself and wife. The money for the purchase of the lot and the erection of the building was, in fact, furnished and paid by Mr. Cook; and while Mrs. Smith claims that she was to be allowed $300 a year for her services, that she owned this property and paid for it, yet it very clearly appears that this was all a mere pretense, and that the property was really all the time Mr. Cook's. She personally had nothing to do with the transaction of the purchase or the building, and could not tell how or when they were had. The complainant is entitled to a decree subjecting her interest in this property to the satisfaction of the judgments. This, however, is a minor matter.

The principal question is as to the validity of the Culbertson mortgages. Between 1873 and January, 1882, Cook executed five mortgages to Culbertson, aggregating $11,500. In January, 1882, and January, 1883, he executed three more mortgages, amounting to $9,800, and secured these by different tracts of real estate. In January, 1882, he executed a chattel mortgage for $12,500, and in January, 1883, another chattel mortgage for $12,000. These last two mortgages were merely given as additional security. As the right to retain possession of the mortgaged property and to sell and dispose of them was retained by the mortgagor under these last two mortgages, and as the property therein was, in fact, sold and disposed of by the mortgagor, they drop out of consideration, except so far as they throw light upon the question of

good faith. The first question is whether these real-estate mortgages were to secure *bona fide* indebtedness. In reference to those executed before January, 1882, both Culbertson and Cook testify as to the genuineness of the debts. Mr. Culbertson was a banker, with whom Mr. Cook did business; and, while it does not appear from their testimony that either of these five mortgages represented a distinct loan made at the time, it does appear from such testimony that the full amount thereof was from time to time advanced from the banker to his customer.

The account of the dealings between Cook and Culbertson during these years is not presented, though Mr. Culbertson offered to produce such account, if desired; but it was not called for. With reference to the transactions between Mr. Culbertson's bank and Mr. Cook from January 1, 1882, onward, an itemized account is presented, and testified to by Mr. Culbertson as correct. The correctness of this account is not challenged by any direct testimony, though, if not correct, means of attack were plainly disclosed by the account itself. It embraces a large number of items, both of debt and credit, with such distinctness as would enable the complainant easily to prove their falsity, if they were false. The various creditors of Cook in whose favor drafts were given by Culbertson could easily have been interrogated, and the truth or falsity of those items shown thereby. In the absence of such testimony, and with the positive testimony of Culbertson as to the correctness of the account, its truth must be considered as proved. As the prior account was not called for when proffered, I think the same conclusion as to its genuineness follows. I know there are some things which make against this conclusion, and the learned counsel for complainant has presented these various matters with a great deal of ingenuity and force. Obviously they throw a good deal of suspicion around the transactions of the banker and his customer. I think the careless and extravagant way in which Cook was carrying on his business sufficiently explains most of the suspicious circumstances. He was carrying on the agricultural implement business, partly as an independent trader and partly doing a commission business. He had warehouses and agencies in six or eight different places, having many agents, and going to large expense in the matter of warehouses, freights, employes, and other expenses. He put his real estate in the name of his wife by reason of some prior pecuniary embarrassments of his own. On several of these lots that stand in his wife's name he put warehouses, and seems to have been frequently trading machines for real estate or mortgages. His banking business was done principally with Culbertson, and it is not strange that in giving his testimony as to the various transactions, without his books or accounts before him, some inaccuracies have crept in; but of the general fact that he was doing a large business, and having his banking transactions with Culbertson, there can be no doubt. Something more, then, than mere suspicion should appear to invalidate the securities given for the balances shown by the banker's books. It seems strange that a banker starting in 1876 with a limited capital—$10,000, as Mr. Culbertson testifies—should have made such large advances to one customer—some

$23,000—in six years; and yet, when we consider the business done by Mr. Cook at so many different places, and the expenses attending the work at each place, it is obvious that he must have somewhere obtained funds therefor. I do not think it strange that at the commencement of the years 1882 and 1883, in view of the expected advances, Mr. Culbertson should ask chattel mortgage security as further collateral. I think he may well have anticipated the difficulties and embarrassments which subsequently befell Mr. Cook; and insisting on all the security he could obtain is not to be charged against him as evidence of fraud. It may be that these chattel mortgages, under the rules laid down by the supreme court of Iowa, could not have been sustained if challenged; but that does not show that Mr. Culbertson was trying to defraud, but simply that he mistook as to the validity of the extra security which he was obtaining. It is also true that just before the September term, 1883, of the courts in which suits were pending against Cook brought by some of the creditors, Mr. Culbertson received sundry conveyances as security. It does not seem to me, from the testimony, that all the security which Mr. Culbertson has can be considered excessive for the indebtedness which he shows; and the mere fact that a banker presses for and obtains security, unless grossly excessive, is not to be charged against him as fraudulent. I do not believe that anything will be gained by noticing in detail the various transactions commented upon by counsel in his brief.

It may be that Mr. Culbertson has not given full credit for the proceeds of all the property received from Mr. Cook, and converted by him since these troubles commenced; and perhaps there should be a credit of $2,000 more, as claimed. But, after all, that which impresses me the most is the fact that an itemized account of the transactions after January, 1882, was presented, and not a single item is shown to be wrong. The burden of proof, of course, is on the complainant. Before wrong and fraud can be adjudged against the defendants, there must be something more than a mere suspicion,—there must be proof; and I have read and reread the testimony without being able to come to any other conclusion than that the transactions and the indebtedness between Cook and Culbertson were substantially as stated, and that no excessive or unreasonable security was exacted or received by Culbertson. Under these circumstances, I do not think the complainant is entitled to any relief as against these mortgages. Defendant Culbertson is therefore entitled to a decree in his favor dismissing the bill. The complainant can take a decree against Mrs. Smith's interest in the lot hereinbefore referred to.